**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HIGH TECH NATIONAL, LLC, d/b/a HIGH TECH LOCKSMITHS, *Plaintiff,* <br><br> v. <br><br> CHARLES STEAD and CHARLES STEAD ENTERPRISES, INC., *Defendants.* | MISCELLANEOUS ACTION NO. 19-191 |

**PAPPERT, J.**                                                                                                   August 27, 2020

## MEMORANDUM

High Tech National, LLC, d/b/a High Tech Locksmiths sued to enforce a subpoena against Charles Stead and Charles Stead Enterprises, Inc. ("CSE"). The Court held Defendants in contempt (Dkt. No. 21) after they failed to comply with an Order enforcing the subpoena. (Dkt. No. 4.) Defendants move for relief from the Contempt Order (Dkt. No. 30) and High Tech moves for an award of attorneys' fees and costs. (Dkt. No. 32.) Defendants repeatedly ignored and defied their responsibilities and the Court's Orders. The Court accordingly denies Defendants' motion and grants Plaintiff's.

I

High Tech served a subpoena on Stead and CSE seeking documents supporting its claims in *HTL, et al. v. Wiener, et al.*, Civ. A No. 19-2489 (S.D. Ind.)[1] on October 4, 2019. (*See* Pl.'s Resp., Dkt. No. 34, at 1-2.) Because Defendants did not respond, High

---

[1] The underlying case has since been transferred from the Southern District of Indiana and consolidated with *HTL, et al. v. Wiener, et al.*, Civ. A. No. 20-22857 (S.D. Fla.). (Pl.'s Resp., at 1-2.)

Tech moved to compel their compliance on December 12. (Pl.'s Mot. to Compel, Dkt. No. 1.) The Court granted the motion on January 23, 2020 and Defendants were served with the Court's Order on February 4. (Dkt. Nos. 5 and 6.) On March 16, High Tech moved to hold Defendants in contempt for their continued non-compliance. (Dkt. No. 7.) The Court held a telephonic hearing on the contempt motion on June 10. (Dkt. No. 15.) Although Defendants were served with the Court's Order scheduling the contempt hearing (Dkt. Nos. 14 and 14), they did not respond to it or appear. The Court granted High Tech's motion on July 2 (Dkt. Nos. 20 and 21) and Defendants were served with the Contempt Order on July 7. (Dkt. Nos. 22 and 23.) It was not until after the Court imposed a $1,000 per day contempt sanction pending Defendants' response to High Tech's subpoena that they had counsel enter appearances on their behalf. (Dkt. Nos. 25 and 28.) Ultimately, they responded to the subpoena on July 20, nine months after their responses were due. (Pl.'s Resp. at 2.). Defendants produced only 36 pages of documents and several of Defendants' responses "assert Defendants have no responsive documents." (Pl.'s Final Status Rpt. Regarding Defs.' Resp. to July 2, 2020 Order, Dkt. No. 33.)

Defendants now ask the Court to set the contempt fine at $8,000, limiting it to the number of days between service of the Contempt Order and "the time when they retained counsel to assist with compliance with the subpoena." (Defs.' Mot., Dkt. No. 30, at 2.) They do not argue for a lower daily amount. Defendants acknowledge they "did not initially comply with the subpoena or previous orders," but ask for relief because they complied with the subpoena "[w]ithin a week of contacting counsel . . . ." (*Id.* at 3.) They do not argue they were unaware of or unable to comply with the subpoena before High Tech sought the Court's help in obtaining a response.

"A fine of between $100 and $1,000 per day is often used to coerce compliance with court orders." *Pasternack v. Klein*, No. 14-2275, 2017 WL 1508970, at *3 (E.D. Pa. Apr. 27, 2017). "One who is fined, unless by a day certain he [complies], has it in his power to avoid any penalty." *Penfield Co. of Cal. v. Sec. & Exch. Comm'n*, 330 U.S. 585, 590 (1947). Defendants have not shown it was beyond their power to avoid the Court's imposition of a coercive civil contempt sanction. Their flagrant disregard for the Court's Order requiring their responses to High Tech's subpoena is "an act sufficiently egregious to result in the imposition of a daily fine." *Int'l Plastics & Equip. Corp. v. Taylor's Indus. Servs., LLC*, No. 07-1053, 2011 WL 1399081, at *9 (W.D. Pa. Apr. 12, 2011). "[T]he power to punish contempt is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on [the Courts] by law. Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911). Hiring a lawyer after disregarding High Tech's subpoena for so long did not constitute compliance with the Court's Orders.

Defendants also ask the Court to reduce the contempt fine because they "have suffered significant financial losses as a result of the COVID-19 pandemic." (Defs.' Mot. at 3.) They contend "Stead suspended his own salary in February 2020 . . . to facilitate continued business operations," and that he "temporarily suspend[ed] employment for all of his employees as of April" while CSE's operations have "slowed to a trickle . . . ." (*Id.*) First, Stead's alleged cost-cutting measures were implemented before the pandemic really affected businesses. Second, Defendants should have complied with High Tech's subpoena when it was served. Given the very small number of documents

Defendants ended up producing, there is no argument, much less evidence, that doing so was burdensome.  Third,

> [t]hough it is well-settled that impossibility of performance is a valid defense to a motion for contempt, . . . and that a party cannot be held in contempt for failure to obey a sanctions order if he lacks financial ability to comply with that order, . . . the burden of production and proof rests on the alleged contemnor to establish the defense . . . .

*Loftus v. Se. Pa. Transp. Auth.*, 8 F. Supp. 2d 464, 468 (E.D. Pa. 1998) (citations omitted), aff'd, 187 F.3d 626 (3d Cir. 1999).  Defendants' motion for relief is not accompanied by affidavits or any other evidence supporting their claimed financial hardships.  They have not shown they are unable to pay the full fine.  "A plea of poverty without adequate proof will not do it."  *Id.*

Because Defendants were not served with the July 2 Contempt Order until July 7, the contempt fine imposed is $13,000, or $1,000 per day from the date they were served until the date of their compliance.

II

The Court's contempt Order allowed High Tech to seek reimbursement of the fees and costs incurred in pursuing Defendants' compliance with its subpoena.  (Dkt. No. 21.)  High Tech seeks $19,153 in fees and $600 in costs.  (Pl.'s Fee Pet., Dkt. No. 32 at 1.)  It is High Tech's burden to prove – through evidence supporting the hours worked and rates claimed – that the fees it seeks are reasonable.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "An award of attorneys' fees and costs to the prevailing party in a civil contempt action is determined according to the 'lodestar method.'"  *Paddick v. Butt*, No. 09-4285, 2018 WL 6830476, at *6 (E.D. Pa. Dec. 27, 2018) (citing *Horizon Unlimited, Inc. v. Silva*, No. 97-7430, 2002 WL 1896297, at *1-2

(E.D. Pa. August 15, 2002)).  The lodestar formula multiplies the reasonable number of hours expended by a reasonable hourly rate.  *See Hensley*, 461 U.S. at 433 (1983).  "The lodestar is presumed to be the reasonable fee." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

High Tech hired two firms to work on this case.  Vedder Price, P.C. attorneys and staff petitioned the Court to compel Defendants' compliance with High Tech's subpoena, drafted the contempt motion and supplemental briefing, participated in the contempt hearing and provided weekly status updates following the Contempt Order.  (Pl.'s Fee Pet. at 4.)  They also communicated with Defendants and their counsel.  (*Id*.)  The firm's hourly rates charged are consistent with prevailing market rates:  attorney Blaine Kimrey, with 22 years of experience, billed his time at a discounted rate of $435 per hour; Bryan Clark, an attorney with 12 years of experience charged $555 per hour; and paralegal Isabella Schamber's hourly rate was $210.  (Blaine C. Kimrey Decl., Dkt. No. 32-1 at ¶¶ 3-6.)  Together, they billed $13,762.50 in fees before July and they seek an additional $1,783.50 for work performed in July.  (*Id*. at ¶¶ 7-9.)  After reviewing their invoices, the Court finds they spent a reasonable amount of time on tasks associated with enforcing High Tech's subpoena.  $15,546 is reasonable compensation for Vedder Price's work.

Lucas & Cavalier attorneys and staff performed tasks similar to those performed by Vedder Price and also coordinated service of necessary documents.  (Pl.'s Fee Pet. at 4-5.)  Their hourly rates are consistent with the prevailing market:  Robert Cavalier, an attorney with 38 years of experience, charged $400 per hour; William F. O'Brien, an associate with 4 years of experience charged $350 per hour; and senior paralegal

5

Sharon Denofa's hourly rate was $150.  (Robert M. Cavalier Decl., Dkt. No. 32-2 at ¶¶ 3-4.)  Together, for work done from January 23 through June 19, they billed $3,240 in fees.  (*Id.* at ¶ 11.)  They seek $367 for additional work performed in July.  (*Id.* at ¶ 13.)  After reviewing Lucas & Cavalier's invoices, the Court finds that $3,607 is a reasonable amount for Vedder Price's time, reasonably spent.

High Tech also incurred $600 in costs including Court fees and service fees charged by Dennis Richman's Services for the Professional, Inc.  (Cavalier Decl., at ¶ 11-12.)  The requested costs are reasonable.

"Defendants do not dispute that an award of attorney's fees and costs may be appropriate under the circumstances, and do not contest the accuracy of High Tech's calculations with respect to those fees and costs."  (Defs.' Resp., Dkt. No. 35, at 5.)  Instead, they ask the Court to reduce any award of fees and costs because of their "attempts to communicate with counsel regarding the subpoena prior to imposition of the Contempt Order" and their financial circumstances.  (*Id.* (emphasis omitted.))  Neither provide a basis for relief from Defendants' obligation to reimburse High Tech for its reasonable attorneys' fees and costs.

"[G]ood faith is not a defense to civil contempt."  *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994).  And although "a party charged with contempt may avail itself of the affirmative defense of substantial compliance," *United States v. Baker Funeral Home, Ltd.*, 196 F. Supp. 3d 530, 552 (E.D. Pa. 2016), Stead's attempts to communicate with counsel regarding the subpoena prior to imposition of the Contempt Order do not establish the defense.  He got around to calling High Tech's counsel on June 19, nine days *after* the contempt hearing where Defendants failed to appear.

6

(Charles Stead Decl., Dkt. No. 35-1, at ¶¶ 12-14.)  He called counsel again on June 22 and on June 24, when he finally spoke with them, told them he "would be willing to provide the information requested in the subpoena." (*Id.* at ¶¶ 16-20.)  High Tech's counsel advised him that a response to the subpoena should be made through counsel. (*Id.* at ¶ 20.)  However, Defendants did not respond to the subpoena or further communicate with High Tech's counsel until after the Court entered the Contempt Order.  (Pl.'s Reply, Dkt. No. 36, at 3.)  "A party substantially complies when it takes all reasonable steps to do so, but nonetheless contravenes the court order by good faith mistake or excusable oversight." *F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 590 (3d Cir. 2010).  Stead's belated calls, made nearly one month before Defendants finally responded to High Tech's subpoena, do not constitute "all reasonable steps to comply with" the Court's January 23 Order.  Indeed, by the time Stead called High Tech's counsel, High Tech had already incurred most of the fees which they now seek to recover.

As for Defendants' financial hardship defense, the Court "may, but need not automatically, exempt the losing party from paying costs" if they are "indigent or unable to pay the full measure of costs . . . ." *In re Paoli R.R, Yard PCB Litig.*, 221 F.3d 449, 464 (3d Cir. 2000).  To determine whether a losing party's indigency creates inequity, the Court measures their "financial condition as it compares to whatever award the Court decides to tax against" it.  *Id.* at 464 n.5.  Defendant's request for a reduction in the fee award based on their financial circumstances is supported only by Charles Stead's declaration in which he states that he stopped drawing a salary from CSE in February 2020 "in an effort to facilitate continued business operations in light

of the economic impact of the COVID-19 pandemic." (Stead Decl., at ¶ 3.) Stead asserts that CSE "has had little to no net income after paying monthly expenses" since April because of COVID-19's impact. (*Id.* at ¶ 10.) His declaration is not enough to establish Defendants' inability to pay the reasonable fees and costs High Tech incurred in gaining their compliance with its subpoena.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
